## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| ELECTRO-MECHANICAL CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:11CV00071 |
| v. | ) ) | **OPINION AND ORDER** |
| POWER DISTRIBUTION PRODUCTS, INC., ET AL., | ) ) ) | By: James P. Jones United States District Judge |
| Defendants. | ) ) | |

*James P. Murphy, McAndrews, Held & Malloy, Chicago, Illinois, and Brady J. Fulton, Northup, McConnell & Sizemore, Asheville, North Carolina, for Plaintiff; John D. Luken, Tammy L. Imhoff, Monika J. Hussell, Robert M. Stonestreet, and Olen L. York, III, Dinsmore & Shohl LLP, Cincinnati, Ohio, and Charleston, West Virginia, and Howard C. McElroy, McElroy, Hodges & Caldwell, Abingdon, Virginia, for Defendants.*

In this patent infringement case, a jury found that the defendants, Power Distribution Products, Inc., Becker Mining America, Inc., and SMC Electrical Products, Inc., willfully infringed five claims of U.S. Patent No. 7,277,294 ("the '294 patent"), which is owned by the plaintiff, Electro-Mechanical Corporation ("EMC"), and that none of the five infringed claims were invalid. The defendants have filed renewed motions for judgment as a matter of law and have also moved for a new trial on the issue of damages or remittitur. EMC has moved for a permanent injunction and has also moved for an award of attorneys' fees, enhanced

damages, and taxation of costs.  Because I find that the defendants did not properly preserve the grounds they assert in their renewed motions for judgment as a matter of law, I will deny those motions.  However, I find that the defendants are entitled to a new trial nisi remittitur because there was insufficient evidence to support the jury's award of lost profits based upon the so-called entire market value rule.

Because the parties disagree about the appropriate scope of an injunction and have offered additional evidence in support of their respective positions, I will reserve ruling on the plaintiff's motion for a permanent injunction pending further proceedings in the case.  I will deny EMC's motions for attorneys' fees and enhanced damages because I find that this case was not exceptional and that the evidence presented at trial does not warrant these forms of relief.  Finally, I will reserve ruling on EMC's motion for taxation of costs until final resolution of the remaining issues in the case.

# I

The relevant facts of the case, as presented at trial and viewed in the light most favorable to EMC, the recipient of the jury's verdict, are as follows.

The '294 patent is entitled "Contactor Draw-Out Tray," and it sets forth inventions relating to a contactor draw-out tray typically used as part of a power distribution system for longwall underground coal mining.  Longwall mining

involves the extraction of coal contained in large rectangular blocks. A cutting machine runs back and forth along the coal face, working under a canopy of movable roof supports. A shearer motor cuts the coal; there are conveyor motors at the head gate and tail gate of the machine; and a crusher removes coal from the shearer and crushes the coal so it can be transported to the surface. After a section of coal from the block has been mined and removed, the roof supports are moved closer to the newly cut face and the roof in the mined out area is allowed to collapse.

The cutting machine is powered by a large electrical distribution system that is approximately the size of a train car. This longwall power system feeds power to motors that operate the cutting machine. As long as the power distribution system and mining equipment are fully functional, excavation of coal from the mine can be continuous. When an electrical component or other piece of equipment fails, however, mining must be suspended temporarily until the problem is repaired. The speed with which repairs are made is of some economic consequence, since the mine is unproductive while it is shut down for equipment repairs. Evidence at trial established that in the past, the cost of suspending longwall mining to repair electrical equipment ranged from $30,000 to $48,000 per hour, and repairs sometimes took several hours to complete.

EMC and the defendants are direct competitors in the market for power distribution systems used in underground coal mining. EMC's commercial product that embodies the ′294 patent is called the Down-Time Saver ("DTS"). Before EMC's development of the DTS, when an electrical component failed, an electrician had to shut down the power distribution system, climb into the system through the top to access the circuitry, disassemble parts of the machine until the electrician could locate the problem, fix the problem, and then reassemble the machine. If repairs could not be performed in the confined quarters of the mine, the power distribution center would have to be removed from the mine so that repairs could be made. Kurt Carlson, a former EMC employee, designed the DTS to allow for quicker, easier repairs and enhanced safety. Carlson gathered the essential electrical components of the longwall power system and put them in a feeder circuit on a draw-out tray that an electrician could slide out of the longwall power system to make repairs. The feeder circuit contains a contactor, which is essentially a large on/off switch; a disconnect mechanism; and a series of relays, ground fault monitors, and safety devices. The draw-out tray allows for easy access to the electrical components, and if a malfunction is not immediately fixable, the draw-out tray can be removed and quickly replaced with a spare tray. The replacement of the draw-out tray would require the power distribution system to be shut down for no more than fifteen minutes. The DTS was also designed to

meet all requirements of industry safety regulations. Thus, Carlson intended that the DTS would maintain safety while reducing downtime and minimizing losses when repairs were necessary. Carlson applied for a patent in 2006, and the ′294 patent was issued in 2007; Carlson assigned the ′294 patent to EMC. Between 2006 and the time of the trial, EMC sold 28 longwall power systems that incorporated the DTS, which sales generated more than $40,000,000 in revenue.

Shortly after EMC began offering the DTS to its customers, the defendants' customers (several of which were also EMC's customers) began to request draw-out trays similar to the DTS. The defendants believed they were losing sales to EMC because they did not offer a draw-out tray product. Sam Handshoe, an employee of the defendants, set out to design a product similar to the DTS and sought to borrow a DTS to assist in his effort. The defendants' final commercial draw-out tray product was called the Circuit-Saver 5 ("CS-5"). The defendants made two sales of longwall power systems containing the CS-5.

Thomas Novak, Ph.D., an expert witness for EMC, opined that the CS-5 infringed claims 4, 14, 17, 22, and 27 of the ′294 patent. The plaintiff's damages expert, Graham Rogers, opined that EMC had suffered $624,494 in lost profits on the defendants' two sales of the infringing product. Rogers applied the entire market value rule to calculate lost profits based on the sales of the entire longwall power distribution systems because, in his opinion, the draw-out tray was the basis

for the customers' purchase of the entire power distribution system, and the infringing and noninfringing components were sold together and operated as a single functioning unit. Alternatively, Rogers opined that if lost profits were not an appropriate measure of damages, then EMC would be entitled to a reasonable royalty of $200,824. The defendants' expert witness, David Podobinski, Ph.D., opined that the CS-5 did not infringe the ′294 patent. The defendants' damages expert, Keith Hock, opined that even if EMC were entitled to damages, the evidence was insufficient to support application of the entire market value rule, and EMC could not prove that it was entitled to recover lost profits.

The defendants also asserted that the ′294 patent was invalid and unenforceable due to anticipation and obviousness. In 1993, SMC Electrical Products, Inc. ("SMC"), one of the defendants, had built a piece of equipment that was similar to the DTS (the "1993 SMC Unit"). At trial, the defendants argued that the 1993 SMC Unit anticipated several claims of the ′294 patent, rendering those patent claims invalid. The defendants also argued that other items of prior art anticipated certain patent claims, and that all of the asserted claims were obvious in light of the prior art. Thus, according to the defendants, the ′294 patent was invalid and unenforceable. EMC presented evidence of a number of objective indicia of nonobviousness, including commercial success and copying by the defendants. The defendants attempted to refute the plaintiff's evidence by showing

that EMC's sales of the DTS were due to price reductions and the fact that EMC

no longer offered its customers non-DTS longwall power distribution systems.

The jury returned a verdict finding that the defendants had willfully

infringed all five of the asserted patent claims and that these claims were neither

anticipated by prior art nor obvious. The jury awarded EMC $491,046 in damages.

I instructed the parties to make any post-trial motions prior to the entry of

judgment. The parties have filed a series of post-trial motions, which have been

fully briefed. The defendants do not contest the jury's findings of infringement,

but they challenge the jury's calculation of damages and reassert their invalidity

defenses. EMC moves for a permanent injunction to prevent future infringement

of the ′294 patent by the defendants and also moves for attorneys' fees, enhanced

damages, and taxation of costs.

II

A.

DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A
MATTER OF LAW REGARDING THE USE OF THE ENTIRE
MARKET VALUE RULE AS A MEASURE OF DAMAGES AND
REGARDING AN AWARD OF LOST PROFITS.

The defendants have filed a renewed motion for judgment as a matter of law

pursuant to Federal Rule of Civil Procedure 50(b), arguing that the jury's

calculation of damages based on the entire market value rule was unsupported by

the evidence, and that the evidence was also insufficient to support a finding that EMC lost profits due to the defendants' two sales of the CS-5. EMC asserts that the defendants waived these arguments by failing to make a sufficiently specific motion for judgment as a matter of law before the case was submitted to the jury. EMC further argues that it presented ample evidence to support the jury's award of lost profits and reliance on the entire market value rule.

Rule 50(a)(2) provides that a preverdict motion for judgment as a matter of law "must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2). Rule 50(b) allows a party to file a renewed motion for judgment as a matter of law after the jury issues its verdict. Fed. R. Civ. P. 50(b). The Advisory Committee Note to Rule 50 clarifies that "[b]ecause the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion." Fed. R. Civ. P. 50 advisory committee's note. The note goes on to explain:

> The earlier motion informs the opposing party of the challenge to the sufficiency of the evidence and affords a clear opportunity to provide additional evidence that may be available. The earlier motion also alerts the court to the opportunity to simplify the trial by resolving some issues, or even all issues, without submission to the jury. This fulfillment of the functional needs that underlie present Rule 50(b) also satisfies the Seventh Amendment.

*Id.* Before 2006, Rule 50 required a preverdict motion for judgment as a matter of law to be made at an express time — the close of all of the evidence — as a

precondition to a postverdict motion for judgment as a matter of law. The strictness of that requirement produced a forgiving attitude toward failures to comply. *See Singer v. Dungan,* 45 F.3d 823, 828-29 (4th Cir.1995) (noting that "various courts have taken an indulgent view as to what constitutes a sufficient predicate for a Rule 50(b) motion"); Fed. R. Civ. P. 50 advisory committee note. However, following the 2006 amendment of the rule, a preverdict motion can now be made "at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). Therefore, the prior reason for indulgence no longer exists.

In this case, the defendants orally moved for judgment as a matter of law at the close of EMC's case-in-chief, but they stated no grounds for their motion. The entire exchange was as follows:

> MR. FULTON: Your Honor, the plaintiff rests.
>
> THE COURT: All right. Are the defendants ready?
>
> MR. LUKEN: For the record we'd like to make a motion for JMOL.
>
> THE COURT: It will be denied. You may call your first witness.
>
> MR. STONESTREET: Defendants call Sammy Handshoe.

(Trial Tr. 80, May 9, 2013.) The defendants did not make another Rule 50(a) motion at the close of all the evidence, and they never attempted to state the reasons for their motion before the case was submitted to the jury. The defendants' preverdict motion did not satisfy the specificity requirement of Rule 50(a)(2), and

it was thus insufficient to preserve the right to assert any particular issues in a renewed motion for judgment as a matter of law. I find that the defendants have waived any right to postverdict judgment as a matter of law, and their Renewed Motion for a Judgment as a Matter of Law Regarding the Use of the Entire Market Value Rule as a Measure of Damages and Regarding an Award of Lost Profits will be denied.

B.

DEFENDANTS' MOTION FOR A NEW
TRIAL ON DAMAGES OR FOR REMITTITUR.

The defendants alternatively request a new trial on damages or remittitur, arguing that the trial evidence did not support an award of damages based on the entire market value rule. According to the defendants, the jury should have based its damages calculation on sales of the infringing device alone rather than sales of entire longwall power systems. The defendants further argue that EMC did not produce sufficient evidence to show its entitlement to lost profits, and the jury instead should have awarded a reasonable royalty.

Rule 59(a)(1)(A) provides for the grant of a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The Fourth Circuit has elaborated by stating that a new trial may be granted if "[1] the verdict is against the clear weight of the evidence, or [2] is based upon evidence which is false, or [3] will result in a

miscarriage of justice." *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.,* 99 F.3d 587, 594 (4th Cir. 1996) (internal quotation marks and citation omitted). The grant or denial of a motion for new trial under Rule 59 is entrusted to the sound discretion of the court. *See Cline v. Wal–Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998). If the district court concludes that the jury's award of damages is excessive, the court has the option of ordering a new trial nisi remittitur. *See id.* at 305.[1]

Where a patent is found to have been infringed, the patent claimant is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C.A. § 284 (West 2001 & Supp. 2013). Lost profits may be an element of damages, but the availability of lost profits is a question of law. *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003).

> To recover lost profits a patentee must show that "but for" infringement it reasonably would have made the additional profits enjoyed by the infringer. [The Court of Appeals for the Federal Circuit] has not restricted patentees to any one particular method of proving "but for" causation. A patentee may resort to any method

---

[1] Even though no sufficient Rule 50(a) motion was made, the court may order remittitur in connection with the defendants' request for a new trial under Rule 59. *See Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1362, 1364 (Fed. Cir. 2001) (finding that jury's lost profit award was based upon evidence deprived from speculative assumptions by an expert witness).

showing, with reasonable probability, entitlement to lost profits "but for" the infringement. Once the patentee establishes the reasonableness of this inference, the burden shifts to the infringer to show that the inference is unreasonable for some or all of the lost profits.

*Id.* (citations omitted).

The entire market value rule may be applied in appropriate circumstances to allow recovery of either lost profits or royalties based on the entire apparatus, rather than just the patented component. *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 286 (N.D.N.Y. 2009) (Rader, C.J., Fed. Cir., sitting by designation). "[T]he entire market value rule permits recovery of damages based on the value of a patentee's entire apparatus containing several features when the patent-related feature is the 'basis for customer demand.'" *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995) (citations omitted). In the *Cornell* case, Chief Judge Rader, citing a number of Federal Circuit decisions, set forth three elements required for invocation of the entire market value rule:

(1) the infringing components must be the basis for customer demand for the entire machine including the parts beyond the claimed invention; (2) the individual infringing and non-infringing components must be sold together so that they constitute a functional unit or are parts of a complete machine or single assembly of parts; and (3) the individual infringing and non-infringing components must be analogous to a single functioning unit.

609 F. Supp. 2d at 286-87 (citations omitted). The Federal Circuit recently reaffirmed that "in any case involving multi-component products, patentees may

not calculate damages based on sales of the entire product, as opposed to the smallest salable patent-practicing unit, without showing that the demand for the entire product is attributable to the patented feature." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67-68 (Fed. Cir. 2012). The *LaserDynamics* decision made clear that it is insufficient for a plaintiff seeking to invoke the entire market value rule merely to show that a customer already in the market for the larger product would choose a version containing the patented component over a version not containing the patented component. Instead, the plaintiff must prove that the customer's decision to buy the larger product in the first place is motivated by the presence of the patented component. *See id.* at 68.

EMC did not present adequate evidence at trial showing that any customer decided to purchase a longwall power distribution system in the first place for the purpose of obtaining the patented draw-out tray technology. At most, EMC's evidence showed that some customers already in the market for longwall power distribution systems chose to purchase systems containing draw-out trays over systems not containing draw-out trays. Rogers, EMC's damages expert, testified that he was unaware of any customer that already owned a working longwall power system without a draw-out tray and chose to replace it with a new system containing a draw-out tray in order to obtain the patented technology. Instead, Rogers confirmed that customers first chose to buy a longwall power distribution

system, and then chose whether the system would include the patented device. This kind of evidence is insufficient to invoke the entire market value rule under *LaserDynamics*. *See id.* ("[I]f given a choice between two otherwise equivalent laptop computers, only one of which [contains the patented component], proof that consumers would choose the laptop computer having the [patented component] says nothing as to whether the presence of that [component] is what motivates consumers to buy a laptop computer in the first place. It is this latter and higher degree of proof that must exist to support an entire market value rule theory.").

Rogers's only calculation regarding lost profits was based on the entire market value rule. Rogers opined that EMC had lost profits totaling $624,494 based on sales of longwall power systems containing CS-5 devices to the Arch Coal and White Oak mines. Rogers calculated this number using EMC's traditional profit margins, but he also provided an alternative lost profits amount of $491,046, representing lost profits calculated using the White Oak mine's cost-plus pricing requirement. Both of these numbers were based on lost profits from sales of the entire longwall power systems, rather than only the systems' draw-out tray devices contained therein. Rogers also testified that if EMC was not entitled to recover lost profits, a reasonable royalty rate would be 4.325%. Rogers then multiplied this royalty percentage with the revenues from the two longwall power systems sold to Arch Coal and White Oak, again applying the entire market value

rule, and opined that at a minimum, EMC would be entitled to recover $200,824 as a reasonable royalty. Hock, the defendants' damages expert, opined that a reasonable royalty rate would be 2.5% to 3%. Noting that the average sales price of individually-sold draw-out tray devices was $19,000 to $20,000 and that the defendants had sold 25 CS-5 units, Hock determined that if EMC were entitled to damages, it could recover between $9,500 and $16,625 as a reasonable royalty.

The jury ultimately awarded $491,046 in damages, indicating that it accepted Rogers's calculation of lost profits based on the entire market value rule. I find this award to be clearly excessive given the nature of the evidence. Because Rogers failed to provide any calculation of lost profits based on sales of the infringing CS-5 devices alone, the maximum award supported by the evidence was a reasonable royalty based on Rogers's proposed royalty rate of 4.325%. Applying that royalty rate to the defendants' sales of 25 CS-5 devices at $20,000 per device, the highest reasonable royalty award supported by the evidence is $21,625. Therefore, I will grant the defendants' motion and will give EMC the option of accepting a remittitur to the amount of $21,625 or agreeing to a new trial on damages.[2]

---

[2] EMC is technically entitled upon remittitur under Fourth Circuit precedent to elect a new trial "upon the whole case" or on damages alone, *see In re Bd. of Cnty. Supervisors of Prince William Cnty., Va.*, 143 F.3d 835, 842 (4th Cir. 1998) (quoting *Kennon v. Gilmer*, 131 U.S. 22, 30 (1889)), but I assume in these circumstances that EMC would not wish to give up its jury verdict as to liability.

## C.

### DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING VALIDITY OF THE ASSERTED PATENT CLAIMS.

The defendants also seek postverdict judgment as a matter of law on the grounds that (1) the jury's findings that claims 4 and 14 of the ′294 patent were not anticipated by prior art was unsupported by the evidence, and (2) all five of the asserted claims are invalid as a matter of law due to obviousness. EMC again contends that the defendants waived these arguments by not properly preserving them in a preverdict motion. Alternatively, EMC argues that substantial evidence supports the jury's findings that the five asserted patent claims were neither anticipated nor obvious.

As noted above, the defendants did not state any grounds for their preverdict motion for judgment as a matter of law. For the reasons stated in II A., *supra*, I find that the defendants waived any right to postverdict judgment as a matter of law based on anticipation or obviousness, and their Renewed Motion for Judgment as a Matter of Law Regarding Validity of the Asserted Patent Claims will be denied.

## D.

### PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION.

EMC has moved for a permanent injunction prohibiting the defendants from committing any further acts of infringement of claims 4, 14, 17, 22, or 27 of the '294 patent. The defendants do not oppose entry of an injunction, but they urge me to structure any injunctive order to permit future service, repair, and rebuilding of CS-5 devices sold to customers prior to the jury verdict. EMC responds that while such a repair exclusion may be appropriate, it should apply only to the two longwall power systems whose sales were addressed at trial, for which EMC will presumably be compensated. The defendants counter that they could not control EMC's strategic decision to seek damages for only two sales when, according to the defendants, EMC was well aware of a third sale that incorporated the CS-5 devices. The defendants argue that an injunction permitting them to service, repair, or rebuild any CS-5 devices sold prior to the jury verdict would allow them to comply with contractual warranties and would promote the health and safety of miners who must work with the equipment in question.

The parties have submitted additional evidence to consider in determining the appropriate scope of a permanent injunction. In light of the newly presented evidence, I find it appropriate to defer ruling on EMC's motion for a permanent injunction pending further proceedings.

## E.

EMC has moved for an award of its attorneys' fees, arguing that the jury's finding of willful infringement makes this an exceptional case under 35 U.S.C.A. § 285 (West 2001). The defendants counter that despite the jury's findings, EMC has not established the objective recklessness prong of willful infringement, which is an issue of law for the court to decide.[3] Moreover, the defendants argue, attorneys' fees are not warranted because this was a close case, the defendants' counsel behaved professionally throughout the litigation, and there is no evidence that the defendants acted in bad faith.

In patent litigation, a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C.A. § 285. "Attorney fees are not

---

[3] EMC claims that the defendants' briefs in opposition to the attorneys' fees motion and enhanced damages motion were untimely filed, and I should therefore treat the motions as unopposed. EMC filed its motions for attorney fees, enhanced damages, taxation of costs, and a permanent injunction on July 4, 2013, approximately two weeks prior to the deadline I set for filing posttrial motions. The original posttrial briefing schedule required the parties to file opposing briefs no later than 14 days after service of a motion. (ECF No. 230.) However, in an order dated May 21, 2013, I amended the briefing schedule to require the parties to file any posttrial motions on or before July 19, 2013; any responses to those motions on or before August 2, 2013; and any replies in support of those motions on or before August 16, 2013. (ECF No. 249.) Based upon this order, it was reasonable for the defendants to file their responses to EMC's motions on August 2, 2013. EMC was not prejudiced by the defendants' filing of the responses on that date, as the parties continued to file reply and surreply briefs for several weeks following that date. Therefore, I decline to find the defendants' responses untimely or treat EMC's motions as unopposed.

to be routinely assessed against a losing party in litigation in order to avoid penalizing a party for merely defending or prosecuting a lawsuit . . . and are awarded to avoid a gross injustice." *Revlon, Inc. v. Carson Prods. Co.*, 803 F.2d 676, 679 (Fed. Cir. 1986) (internal quotation marks and citations omitted). The prevailing party first must establish by clear and convincing evidence that the case is exceptional, which typically requires showing that the claim was frivolous, that the patent holder engaged in inequitable conduct before the Patent and Trademark Office, or that the non-prevailing party committed misconduct during the litigation. *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1308 (Fed. Cir. 2012). Willful infringement may also support an exceptional case finding. *Monolithic Power Sys., Inc. v. O2 Micro Int'l. Ltd.*, No. 2012–1221, 2013 WL 4055141, at *5 (Fed. Cir. Aug. 13, 2013). To show willfulness, a patent holder must establish, by clear and convincing evidence, "that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). "[A]ccused infringers with grounds for believing the patent to be invalid or not infringed, are shielded from the additional litigation burden of fee-shifting when their positions are reasonable." *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 711 F.3d 1341, 1346 (Fed. Cir. 2013). If the court first finds that the case is exceptional, the

court must then determine the appropriateness and amount of any award of attorney fees. *Id.*

I agree with the defendants that EMC has not established the objective recklessness required for an award of attorneys' fees. The evidence at trial showed that the defendants were aware of the ′294 patent when Handshoe designed the CS-5, but that fact alone is insufficient to show that the defendants acted despite an objectively high likelihood that their actions constituted infringement of a valid patent. The defendants' witnesses testified that they knew that draw-out devices similar to the DTS had existed for decades and that SMC had developed its 1993 Unit years prior; therefore, they believed the patent was invalid. Their belief was certainly reasonable, as demonstrated by the substantial evidence they produced in support of their anticipation and obviousness defenses at trial. Although the defendants did not ultimately succeed on these defenses, the invalidity defenses were far from baseless. EMC also introduced evidence that the defendants planned to make minor changes to the DTS design to avoid potential infringement. EMC argues that this shows that the defendants clearly did not think the patent was invalid, but it is quite reasonable to find instead that the defendants both suspected the patent to be invalid and also chose to cover their bases by attempting to avoid infringement in case the patent were found to be valid. Moreover, the fact that the defendants attempted to vary the design of the device sufficiently to avoid

infringing the ʹ294 patent weighs against a finding of willful infringement, as it shows that the defendants specifically tried not to infringe the patent. Therefore, despite the jury's findings of willful infringement, I find that EMC has not met its high burden of proving by clear and convincing evidence that the defendants acted objectively recklessly in designing and marketing the CS-5. Because EMC has not established that this is an exceptional case, an award of attorneys' fees is unwarranted, and I will deny its motion.

F.

EMC'S MOTION FOR ENHANCED
DAMAGES UNDER 35 U.S.C.A. § 284.

EMC has also moved for enhanced damages, arguing that the defendants' willful infringement warrants an increased award. The defendants contest this conclusion, again arguing that EMC has failed to prove objective recklessness, and further contend that the totality of the circumstances does not warrant an award of enhanced damages.

A court may increase the damages for patent infringement up to three times the amount found by the jury or assessed by the court. 35 U.S.C.A. § 284. "[T]he decision to grant or deny enhanced damages remains firmly within the scope of the district court's reasoned discretion, informed by the totality of the circumstances." *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1274 (Fed. Cir. 1999). Like an award of attorneys' fees under § 285, an award of enhanced damages under §

284 "requires a dual determination that the position of the sanctioned party is (1) objectively unreasonable, and (2) asserted in subjective bad faith." *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 701 F.3d 1351, 1353 (Fed. Cir. 2012). Thus, "proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness." *Seagate,* 497 F.3d at 1371. A finding of willful infringement is a prerequisite to an award of enhanced damages; nevertheless, "a finding of willfulness does not require an award of enhanced damages; it merely permits it." *Id.* at 1368. Whether an infringing party sought and relied upon advice of counsel prior to committing acts of infringement is an important factor in the willfulness analysis, but it is not dispositive. *Id.* at 1369. If the patent holder satisfies the threshold objective inquiry, it must then prove that the infringer either knew of the risk of infringement or the risk was so obvious that the infringer should have known of it. *Id.* at 371.

The Federal Circuit has culled nine factors from the case law that can assist courts in determining the appropriateness and amount of enhanced damages: (1) whether the infringing party deliberately copied the patent-holder's patent or commercial device; (2) whether the infringing party investigated the patent's scope and believed in good faith that it was invalid or not infringed; (3) whether the infringing party engaged in misconduct during the litigation; (4) the infringing party's size and financial condition; (5) whether the determination of willfulness

was a close case; (6) the duration of the infringement; (7) whether the infringing party took any remedial action; (8) the infringing party's motivation for infringement; and (9) whether the infringer attempted to conceal the infringement. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992), *superseded on other grounds as recognized by Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575 (Fed. Cir. 1996).

As discussed above with respect to EMC's motion for attorneys' fees, I find that EMC has not proven objective recklessness. In arguing to the contrary, EMC focuses on the defendants' failure to obtain a legal opinion regarding the validity of the ′294 patent or whether the CS-5 infringed it before marketing the CS-5. While failure to obtain a legal opinion is one factor to be considered in determining objective recklessness, that factor alone does not warrant a finding that the defendants' positions regarding validity and infringement were objectively unreasonable. The defendants' efforts to make design changes in order to avoid infringing the ′294 patent weigh against a finding of deliberate copying. The defendants did not engage in any misconduct in the course of the litigation that would warrant enhancement of damages. The duration of the infringement was relatively brief, and the defendants have represented to the court that they have already amended their contracts with their customers to substitute a redesigned non-infringing device for the CS-5 device. The defendants' motivation for

designing the infringing product was not malicious, but driven by customer demand — a legitimate economic pressure — as well as safety concerns. Finally, the evidence established that the defendants premiered their CS-5 device at a trade show; there is no evidence that they attempted to conceal their infringement. In this case, the totality of the circumstances weighs against an award of enhanced damages, and I will deny EMC's motion for enhanced damages.

G.

EMC'S MOTION FOR TAXATION OF COSTS.

Particularly because EMC will have the option of a new trial on the issue of damages in lieu of accepting the remittitur, any determination of costs at this time would be premature. I will therefore reserve ruling on EMC's Motion for Taxation of Costs until resolution of the remaining issues in the case.

III

For the foregoing reasons, it is **ORDERED** as follows:

1. EMC's Motion to Declare This an "Exceptional Case" Under 35 U.S.C. § 285 and For Attorney Fees (ECF No. 252) is DENIED;

2. EMC's Motion for Enhanced Damages Under 35 U.S.C. § 284 (ECF No. 254) is DENIED;

3. The defendants' Renewed Motion for Judgment as a Matter of Law Regarding the Use of the Entire Market Value Rule as a Measure of Damages and Regarding an Award of Lost Profits, and Motion for a New Trial on Damages or for Remittitur (ECF No. 263) is GRANTED IN PART and DENIED IN PART;

4. Within fourteen (14) days of entry of this Order, EMC must file a notice stating whether it will consent to reduced damages in the amount of $21,625 or will instead elect a new trial on the issue of damages;

5. The defendants' Motion for Judgment as a Matter of Law Regarding Validity of the Asserted Patent Claims (ECF No. 265) is DENIED; and

6. The defendants' Request for Oral Argument on Post-Trial Motions (ECF No. 281) is DENIED as to those motions decided herein, without prejudice to a future request as to those motions upon which decision has been reserved as noted herein.

ENTER:  September 10, 2013

/s/  James P. Jones
United States District Judge